STATE OF MICHIGAN
IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| STRATEGIC STAFFING SOLUTIONS, L.C., <br><br> Plaintiff, <br> v. <br><br> URBAN ARMZ, LLC, JOHN DONALDSON, and CARLIE WINTERS, <br><br> Defendants. | CASE NO. <br><br> JURY TRIAL: YES |

## COMPLAINT

Strategic Staffing Solutions, L.C. (herein referred to as "S3" or "Plaintiff"), by and through its attorneys, Foley & Lardner LLP, and for its Complaint against Defendants Urban Armz, LLC (herein referred to as "Urban Armz"), John Donaldson (herein referred to as "Mr. Donaldson"), and Carlie Winters (herein referred to as "Ms. Winters") (collectively, "Defendants") declares and states as follows:

### I. THE PARTIES

1. Plaintiff S3 is a limited liability company organized under the laws of the state of Florida with its principal place of business in Detroit, Michigan. S3 offers staff augmentation, vendor management programs, consulting, direct hire,

temporary staffing, training, direct placement, contract employees, and payroll services throughout the United States.

2. Each of S3's members resides in the state of Michigan, Illinois, or Tennessee.

3. Upon information and belief, Urban Armz is a limited liability company organized under the laws of the state of Utah with its principal place of business in St. George, Utah. Urban Armz purports to provide ammunition sourcing, product prototyping and development, and equipment procurement services.

4. Upon information and belief, Urban Armz's sole member is Mr. Donaldson, a resident of Utah.

5. Upon information and belief, Urban Armz's Controller is Ms. Winters, a resident of Utah.

## II. JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction by virtue of 28 U.S.C. § 1332. The amount in controversy at issue herein exceeds $75,000 and the parties are diverse.

7. This Court has personal jurisdiction over Defendants because Defendants have purposefully availed themselves of the privilege of doing business within the District and maintain continuous and systematic contacts with the District.

8.	Venue is proper in the District in accordance with 28 U.S.C. § 1391 because the District is the judicial district in which "a substantial part of the events or omissions giving rise to the claim occurred."

### III.  APPLICABLE LAW

9.	Because this is a federal lawsuit based on diversity jurisdiction, state substantive law is applicable to this case.[1]

10.	The law of the State of Michigan applies with respect to the claims herein below because the negotiation of the transaction and a substantial portion of the events giving rise to said causes of action occurred in Michigan.

### IV.  FACTUAL BACKGROUND

11.	On February 24, 2022, Russia invaded Ukraine in a major escalation of the Russo-Ukrainian War that began in 2014.

12.	Upon learning that Ukrainian first responders lacked appropriate gear to protect against bullets, Plaintiff S3 determined to purchase and donate protective gear to send to Ukraine.  S3 appointed employee Bob Zhang ("Mr. Zhang") to coordinate the purchase and donation of the protective gear.

13.	In or about March 2022, Plaintiff S3, from its Michigan headquarters, identified Urban Armz as a source to supply the Ukrainian first responders with protective gear.  S3 communicated with Defendants about its desire to purchase

---

[1] *See, e.g.*, *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938).

level 4 protective vests from Urban Armz in order to donate the vests to Ukrainian first responders.

14. Mr. Donaldson, founder and Chief Executive Officer of Urban Armz, quoted a fully refundable deposit of $20,000 for the vests via email on or about March 30, 2022. A true and accurate copy of the email is attached and incorporated herein as Exhibit A. S3 paid the deposit via ACH to Urban Armz shortly thereafter, on or about April 1, 2022.

15. Urban Armz issued a final invoice to S3 on April 27, 2022 for $280,000 for 2,060 battle steel level 4 armor and 1,030 battle steel plate canter with removable cummerbund. A true and accurate copy of the invoice is attached and incorporated herein as Exhibit B.

16. S3 paid the invoice in full on or about April 28, 2022. The total cost for the protective gear was $300,000, including the fully refundable $20,000 deposit.

17. S3 and Defendants agreed that Defendants would deliver the protective gear to Roman Ozimko ("Mr. Ozimko") of the Ukrainian American Coordinating Counsel ("UACC") at 600 Markley Street in Port Reading, New Jersey. UACC agreed to accept delivery of the protective gear and arrange for the transport of the protective gear from New Jersey to Ukraine through appropriate channels.

18. Urban Armz agreed to bear the risk of loss until the protective gear was actually delivered to Mr. Ozimko in Port Reading, New Jersey.

19. Urban Armz provided a bill of lading with an estimated delivery by May 18, 2022 of eight pallets of protective gear to UACC. Notably, the bill of lading provided by Urban Armz was not signed by the carrier so there is no proof that the goods were ever provided to the carrier by Urban Armz. A true and accurate copy of the bill of lading provided to S3 is attached hereto as Exhibit C. Mr. Zhang confirmed with Urban Armz on May 16, 2022 that delivery was on track.

20. Over three weeks passed without delivery of the protective gear. Then, on June 11, 2022, Mr. Donaldson wrote via email that the shipping truck was ready and requested a time to schedule the delivery.

21. S3 repeatedly communicated with Mr. Ozimko of UACC regarding the status of the delivery. UACC indicated on multiple occasions that it had been assured initially that the goods would be delivered by June 16, 2022. According to UACC, the anticipated delivery date kept changing and Mr. Ozimko indicated that he was frustrated by the difficulty of getting reliable information from the individual that Donaldson said was the delivery driver.

22. No delivery was made on June 16, 2022. Over the next week, S3 repeatedly inquired about the status of the delivery but was informed of delays supposedly due to shipping issues.

23. After delivery was again promised on June 24, 2022 and never made, Mr. Zhang contacted Mr. Donaldson for an update and to express frustration with

the repeated delays. Mr. Donaldson responded that he "believe[s] we've got it handle [sic] after todays [sic] conversation."

24. On June 28, 2022, S3 received an email from "Accounting@urbanarmz.com" blaming the lack of delivery on a new shipping company. Urban Armz's accounting department claimed that the pallets were removed from the truck at an undisclosed and unrelated warehouse and never reloaded.

25. Though Urban Armz promised delivery in mid-May, all evidence suggests that Urban Armz and its management had no intention of ever delivering the promised goods. For example, they failed to provide replacement goods to cover the supposedly "lost" shipment. Further, despite promises from Urban Armz to provide documentation of the "lost" shipment, such documentation still has not been provided.

26. Upon information and belief, to the extent that Defendants were ever actually in possession of the protective gear, Defendants intentionally refused to deliver the protective gear to the carrier for transportation and instead retained any protective gear for their own use and benefit.

27. On June 29, 2022, Mr. Zhang requested a full refund from Mr. Donaldson. The next day, on June 30, 2022, Mr. Donaldson acknowledged Urban Armz bore the risk of loss and agreed to provide a full refund to S3.

28. Over a week later, and after repeated follow up from Mr. Zhang to obtain a refund, Ms. Winters, Urban Armz's Controller, approved a full refund of $300,000 and sent Mr. Zhang an ACH form via DocuSign to initiate the refund process.

29. On July 7, 2022, Ms. Winters acknowledged that Urban Armz had caused substantial harm to S3 and confirmed that Urban Armz would issue a full refund to S3, including the freight charges.

30. Mr. Zhang completed and submitted the ACH form providing banking instructions for the refund on or about July 11, 2022. Urban Armz confirmed receipt of the ACH form shortly thereafter, on or about July 12, 2022.

31. Upon information and belief, neither Urban Armz, Mr. Donaldson, nor Ms. Winters had any intention of refunding S3's payment. Instead, they intended to use the funds to obtain protective gear for their own use and benefit.

32. On August 15, 2022, after receiving a demand letter from S3's counsel, Ms. Winters confirmed that Urban Armz received S3's payment and used it to obtain the protective gear. Ms. Winters offered to refund S3's money in exchange for a release of claims. She promised that the refund would occur within a week, but then failed to refund the money or follow up.

33. On September 2, 2022, counsel for Defendants contacted counsel for S3, claiming that he would provide proof that the goods were delivered to a

legitimate carrier for delivery and a proposal from Defendants to "make it right" by September 7, 2022. Like the other promises and communications from Defendants, however, their counsel failed to follow up at all.

34. To this date, S3 has not received delivery of the protective gear or the promised refund.

## V. CAUSES OF ACTION

### COUNT ONE: BREACH OF CONTRACT
### (AGAINST URBAN ARMZ)

35. S3 incorporates by reference and realleges the preceding paragraphs as if set forth in full herein.

36. S3 and Urban Armz executed an enforceable contract for a sale of goods.

37. At all times, S3 has substantially performed its obligations under the contract.

38. At all times, Urban Armz bore the risk of loss pursuant to MCL 440.2509.

39. Urban Armz breached the contract by, among other things, its failure to effect delivery as described herein.

40. Urban Armz also breached the contract by failing to compensate S3 for any loss of the protective gear while it was in possession of any carrier.

41. As a direct and proximate result of Urban Armz's material breach of the contract, S3 has been, and will continue to be, damaged in an amount substantially in excess of $75,000, exclusive of interest and costs.

## COUNT TWO: STATUTORY CONVERSION
## (AGAINST ALL DEFENDANTS)

42. S3 incorporates by reference and realleges the preceding paragraphs as if set forth in full herein.

43. At all relevant times, S3 had the right to possession of the protective gear.

44. At all relevant times, S3 had the right to possession of the promised refund.

45. Defendants wrongfully exerted dominion over the protective gear by failing to deliver the protective gear at the times and places promised.

46. Defendants wrongfully exerted dominion over the promised refund by failing to deliver the promised refund at the times and places promised.

47. Defendants converted the protective gear and the promised refund for their own use and benefit.

48. Defendants' actions constitute statutory conversion of the protective gear and the promised refund, pursuant to MCL 600.2919a.

49. Mr. Donaldson and Ms. Winters are liable in their personal capacity for their acts of conversion alleged herein. *See, e.g.*, *Att'y Gen. v. Ankersen*, 385 N.W.2d 658, 673 (Ct. App. Mich. 1986).

50. Pursuant to MCL 600.2919a, S3 is entitled to recover treble damages and attorney fees.

51. As a result of Defendants' conversion of the protective gear and the promised refund, S3 has incurred damages in an amount to be proven at trial, including, but not limited to, treble damages under applicable statutes, incidental and consequential damages, along with interest, costs, attorney fees, and all other relief permitted by law and/or contract.

## COUNT THREE: COMMON LAW CONVERSION
## (AGAINST ALL DEFENDANTS)

52. S3 brings this Count Three in the alternative to Count Two.

53. S3 incorporates by reference and realleges the preceding paragraphs as if set forth in full herein.

54. At all relevant times, S3 had the right to possession of the protective gear.

55. At all relevant times, S3 had the right to possession of the promised refund.

56. Defendants wrongfully exerted dominion over the protective gear by failing to deliver the protective gear at the times and places promised.

57. Defendants wrongfully exerted dominion over the promised refund by failing to deliver the promised refund at the times and places promised.

58. Defendants converted the protective gear and the promised refund for their own use and benefit.

59. Defendants' actions constitute conversion under Michigan common law.

60. Mr. Donaldson and Ms. Winters are liable in their personal capacity for their acts of conversion alleged herein. *See, e.g.*, *Att'y Gen. v. Ankersen*, 385 N.W.2d 658, 673 (Ct. App. Mich. 1986).

61. As a result of Defendants' conversion of the protective gear and the promised refund, S3 has incurred damages in an amount to be proven at trial, including, but not limited to, incidental and consequential damages, along with interest, costs, attorney fees, and all other relief permitted by law and/or contract.

## COUNT FOUR: UNJUST ENRICHMENT
### (AGAINST ALL DEFENDANTS)

62. S3 brings this Count Four in the alternative to Count One.

63. S3 incorporates by reference and realleges the preceding paragraphs as if set forth in full herein.

64. Defendants instructed S3 to deliver payment for the protective gear

65. S3 relied on the representations and instructions provided by Defendants in delivering the payments.

66. Defendants were aware that S3 was delivering payments for the protective gear.

67. Defendants received a benefit from S3 delivering the payments.

68. Defendants have retained that benefit without fully compensating S3.

69. It is inequitable for Defendants to retain such benefit without fully compensating S3.

70. S3 has no adequate remedy at law.

71. S3 is entitled to recovery in unjust enrichment a sum in excess of $75,000.

## COUNT FIVE: QUANTUM MERUIT
### (AGAINST ALL DEFENDANTS)

72. S3 brings this Count Five in the alternative to Count One and Count Four.

73. S3 incorporates by reference and realleges the preceding paragraphs as if set forth in full herein.

74. Defendants instructed S3 to deliver payment for the protective gear.

75. S3 relied on the representations and instructions provided by Defendants in commencing to deliver the payments.

76. Defendants were aware that S3 was delivering payments for the protective gear.

77. Defendants received a benefit from S3 delivering the payments.

78. Defendants have retained that benefit without fully compensating S3.

79. It is inequitable for Defendants to retain such benefit without fully compensating S3.

80. S3 has no adequate remedy at law.

81. S3 is entitled to recovery in quantum meruit a sum in excess of $75,000.

## COUNT SIX: PROMISSORY ESTOPPEL
### (AGAINST ALL DEFENDANTS)

82. S3 brings this Count Six in the alternative to Count One, Count Four, and Count Five.

83. S3 incorporates by reference and realleges the preceding paragraphs as if set forth in full herein.

84. Urban Armz promised S3 it would deliver the protective gear and the promised refund.

85. Urban Armz reasonably should have expect that, as a result of Urban Armz's promise, S3 would, among other things, rely upon Urban Armz's promise by delivering payment to Urban Armz.

86. S3 reasonably and detrimentally relied upon Urban Armz's promise by, among other things, delivering payment to Urban Armz.

87. S3 has no adequate remedy at law.

88. Urban Armz's promise must be enforced to prevent injustice, since S3 would be forced to forgo tens of thousands of dollars in damages as a result of Urban Armz's reneging on its promise to deliver the protective gear and the promised refund.

## VI. DEMAND FOR JURY TRIAL

89. S3 hereby demands a trial by jury on all issues of fact to which it is entitled to a jury trial in this action.

## VII. PRAYER FOR RELIEF

WHEREFORE, S3 respectfully requests that this Court enter judgment in favor of Plaintiff S3, and against Defendants Urban Armz, Mr. Donaldson, and Ms. Winters for the following relief:

A. Monetary damages for actual damages and treble damages as a result of Defendants' wrongful conduct in excess of $75,000, exclusive of interest and costs;

B. All attorneys' fees and costs incurred in connection with Defendant's wrongful conduct;

C. Equitable relief, including restitution, as applicable; and

D. Such other and further relief as to which S3 may be entitled at law or in equity.

                      Respectfully submitted,

                      **FOLEY & LARDNER LLP**
                      Attorneys for Plaintiffs

By:   */s/ Jennifer Z. Belveal*
       Jennifer Z. Belveal (P54740)
       Raymond J. McVeigh (P84799)
       500 Woodward Avenue, Suite 2700
       Detroit, Michigan 48226
       Phone: (313) 234-7176
       jbelveal@foley.com

Dated: September 20, 2022      rmcveigh@foley.com